IN THE MATTER OF HAROLD CLEVELAND SCHULTZ, JR., BY HIS NEXT FRIEND AND SECRETARY, DORIS ROBERTS, FOR A WRIT OF HABEAS CORPUS.—180 S. W. (2d) 613.

Springfield Court of Appeals. May 9, 1944.

1108

*Henry Cleveland Schultz* and *Farrington & Curtis* for petitioner.

*Elbert Ford* and *Elmer Peal* for respondent.

BLAIR, P. J.—This is a *habeas corpus* case by Harold Cleveland Schultz, Jr., and his secretary, Doris Roberts, both of the State of California, for the custody of one Elaine Schultz, a female child of twelve years of age, in the custody of defendant, and brought against the mother of Elaine, Kathleen Schultz, and Elaine's grandfather, Arthur Davis, both residents of Senath, Missouri. Arthur Davis disclaimed any right to the custody of said child, and he need not be considered any further than that he is one of the persons with whom Elaine must come in contact in Senath, if Elaine remains there.

It seems that Harold Cleveland Schultz, Jr., who will hereafter be referred to as petitioner, and Kathleen Schultz, who will hereafter be referred to as defendant, were formerly man and wife, and lived in the State of California, and Elaine was born to them in that State about the year 1931. At sometime later, petitioner secured a divorce from defendant and was ordered by the California Court to pay defendant a sum of money per month deemed sufficient for the support of Elaine, who was then in Missouri, and whose custody was not fixed by the California Court. There is no evidence that such payments were not promptly made as ordered by the California Court. Elaine was then of tender years and, so far as we are advised, petitioner did not then even ask for her custody. In fact petitioner left defendant and Elaine in Missouri for several years after the birth and babyhood of said Elaine, and did not ask for such custody until about the time this proceeding was instituted.

Petitioner has since married and again secured a divorce, and at the present time is single and in the United States service. Petitioner proposes to put Elaine in some private girls' school, or leave her with his mother, divorced from petitioner's father, and since remarried to another. Neither petitioner, his said mother, nor Elaine testified as a witness in this case.

Honorable Clarence A. Powell, of Dexter, Missouri, was appointed by this court as special commissioner, with the power and duty to report to this court as to his findings of fact and his conclusions as to the law involved in the case. Such commissioner has made the following recommendations to this court: "The Commissioner recommends that the custody of the child involved in this proceeding, Elaine Schultz, be remanded to her mother, Kathleen Schultz."

To this report petitioner has filed exceptions and attorneys for both petitioner and defendant have fully briefed and argued the case, and it is thus before the court.

The pleadings, exceptions and argument of petitioner's attorney tend to show that defendant is not morally a fit person to have the

custody of a twelve-year-old girl. The first claims of petitioner were against the grandfather, Arthur Davis, but since he has disclaimed any right to the custody of Elaine, we will not consider his character any further than the custody of Elaine, if left in defendant, would necessarily involve association with Arthur Davis.

Petitioner made very serious charges against Kathleen Schultz, among which were that she was addicted to the use of paregoric in excessive quantities and that she associated with a person of immoral character, to-wit, one Bill Powell, and held herself out as the wife of said Bill Powell. Defendant was also charged with the use of intoxicating liquors, which defendant practically admitted, and said that she first used such liquors in petitioner's home in California. Defendant denied that she had ever said that she was the wife of Bill Powell; but the special commissioner has found that she did make such statement at one time, though such occasion was not accompanied by any opportunity for sexual intercourse; but such intercourse may be presumed, if defendant was actually the wife of said Powell.

It was stated in argument that the special commissioner omitted comment on certain witnesses. We have carefully examined the testimony in the case and are certain that some witnesses were not noticed by the commissioner in his report; but such witnesses testified largely to events occurring at some time prior to the date of the hearing. The testimony of one witness, Doris Roberts, tended to show that Kathleen Schultz used paregoric close to the time of the hearing. Our special commissioner does not give Kathleen Schultz a very good reputation until shortly before the hearing. He said:

"The defendant states that she realizes that she has been indiscreet with her relationship with Bill Powell; that she has quit visiting his room; that she will not do so again; and that she has discontinued the use of paregoric. She should realize that for Elaine to be the kind of person she no doubt wants Elaine to be, she should be careful in selecting her own companions and in her own behavior and habits. By her future conduct she should honestly permit the love and attachment of Elaine. Should the defendant at some future time lose her self respect by her personal misconduct or improper training have the slightest evil influence upon the life of Elaine, then another action should be brought immediately to remove Elaine from her custody."

We cannot say that we approve the past conduct of defendant. The guiding star in this sort of a case, as well as in a divorce case, must always be the welfare of the child. [West v. West, 94 Mo. App. 683-687.]

While the recommendations of our special commissioner are in no sense binding on us, as are the facts as found by a jury or a trial court in a law case, some deference must be paid to the findings of a commissioner. He saw and heard the witnesses. We have before us only the cold record. From that record we cannot help but find that,

irrespective of the previous moral character of the defendant, which the commissioner finds was good at the time of and shortly before the hearing, the playmates and associates of Elaine came from the best families of Senath. This proof speaks volumes, for it is a well-known fact that mothers do not usually permit their children to associate with children of undesirable parents, if they know it. Elaine was well taken care of and apparently had not yet suffered from intimate association with defendant.

The petitioner and his mother may be good people. They must be presumed to be such; but neither of them testified as witnesses in this case, and we know nothing more about their good moral character than the presumption supplies. Petitioner has no home to which Elaine could go. He proposes merely to put Elaine in a girls' school in the State of California. Petitioner's mother, divorced from petitioner's father, and since remarried to another man, does not even testify that she is willing to take Elaine, if the girls' school proposition is not acceptable. We know nothing about her home. Elaine is past twelve years of age, and soon will be old enough to determine for herself with whom she will live. So far as the record shows, she was not consulted as to this.

Unlike a divorce case, this court does not retain jurisdiction of Elaine and her custody, and can only make such orders between petitioner and defendant as affect her present custody. [29 C. J. 112, sec. 106; 29 C. J. 117, sec. 114; Ex Parte Smith (Mo. App.), 200 S. W. 681; State ex rel. v. Rassieur, 186 Mo. App. 214, 171 S. W. 688.] However, a writ of *habeas corpus* can issue later, if it becomes apparent that defendant is not a suitable person to have such custody.

So we feel that we can only say with our special commissioner, who saw and heard all of the witnesses, that "the child involved in this proceedings, Elaine Schultz, be remanded to her mother, Kathleen Schultz."

It is ordered that the child Elaine Schultz be remanded to the custody of defendant, Kathleen Schultz. *Fulbright, J.*, concurs; *Smith, J.*, absent.